IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| RODERICK JOLIVETTE, | * |
| Plaintiff, | * |
| vs. | *   CASE NO. 4:17-CV-200 (CDL) |
| CITY OF AMERICUS, | * |
| Defendant. | * |

O R D E R

This is a race discrimination, comparative qualifications employment case. Roderick Jolivette, a black male, applied for the fire chief position in Americus, Georgia. Americus hired Roger Bivins, a white male, for the position. Jolivette claims that his qualifications were substantially superior to those of Bivins, and therefore, Americus's decision not to hire him must have been because of his race or in retaliation for his past discrimination suits against his previous employer. Americus responds that after considering all of the qualifications of Jolivette and Bivins, including their interviews, it determined that Bivins was the most qualified for the position. Because Jolivette's qualifications are not sufficiently superior to Bivins's such that it is obvious Jolivette was better qualified for the position and because Jolivette pointed to no other evidence that Americus's decision was motivated by race or unlawful retaliation, Americus is entitled

1

to summary judgment on Jolivette's Title VII claims. Accordingly, Americus's motion for summary judgment (ECF No. 13) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Jolivette, the record reveals the following facts:

In February 2017, Americus posted an external job posting for the position of fire chief. The job posting stated that the position required a bachelor's degree in fire science, public administration, or a closely related field, and that a master's degree was preferred. Def.'s Mot. for Summ. J. Ex. A, Job Posting,

ECF No. 13-3. City Manager Steve Kennedy had the authority to hire the new fire chief. Kennedy Aff. ¶ 6, ECF No. 13-5.

I. **Jolivette's Qualifications**

Twenty-six candidates applied for the position. Jones Aff. ¶ 7, ECF No. 13-7. Americus selected five candidates to move forward, including Jolivette and Roger Bivins, a white male who was then a battalion chief for the Americus fire department. Jolivette holds associate degrees in fire science technology and in management and supervisory development, a bachelor's degree in political science, and a master's degree in public administration. Jolivette Résumé 1, ECF No. 20-12. Bivins does not have a bachelor's degree. Bivins Résumé 1, ECF No. 20-11. Jolivette also holds numerous specialized training certificates, many of which Bivins did not have. *Compare* Jolivette Résumé 1 *with* Bivins Résumé 1 (demonstrating Jolivette's additional "specialized training"). Further, Jolivette is a fourth-year National Fire Academy executive fire officer student, while Bivins has only completed a few classes towards the certification. Jolivette Résumé 1; Bivins Dep. 68:3-9, ECF No. 20-6. Jolivette also has four NPQ Fire Officer certifications to Bivins's two and three NPQ Fire Instructor certifications to Bivins's one. Jolivette Résumé 1; Bivins Dep. 68:16-69:3. Additionally, unlike Bivins, Jolivette is a certified peace officer, CPR instructor, Georgia fire inspector, arson investigator, and deputized local fire marshal.

3

Jolivette Résumé 1; Bivins Dep. 69:11-22 (admitting lack of these qualifications). Unlike Bivins, Jolivette is also a member of several professional firefighting organizations, serves on several community boards, and has received various civic awards. Jolivette Résumé 1-2.

Jolivette also has more experience than Bivins as a fire chief and an assistant chief. Jolivette is currently the fire chief of Manchester, Georgia. He previously served several roles in the Albany, Georgia fire department, including assistant fire chief. *Id.* at 2. Bivins has never served as a fire chief. Bivins Dep. 71:4-11. Americus does not dispute that on paper Jolivette demonstrated impressive credentials. Jones Dep. 87:17-22, ECF No. 20-4. It also acknowledges that it initially placed Bivins's application into the "does not meet minimum qualifications" category. *Id.* at 59:17-21. Nonetheless, Americus still considered Bivins's application because of the "totality" of his skills, experience, and education, as permitted by the job description. *Id.* at 59:21-60:3.

**II. The Interview Process**

If Americus hired employees for such key positions as fire chief solely based upon a written résumé, then Jolivette likely would have gotten the job. But Americus, like many (perhaps most) employers, placed great weight on applicant interviews, as demonstrated by the extensive interview process used here.

4

Americus conducted three rounds of interviews. The first interview panel consisted of Kennedy, Americus human resources director Dee Jones, and departing fire chief Allen Erkhardt. Jones Aff. ¶ 8. The second panel included city department heads, fire captains, fire engineers, and fire battalion chiefs. *Id*. ¶ 10. Four candidates moved forward after the second interview. *Id*. The remaining candidates then interviewed with a panel of fire chiefs from other local agencies. *Id*. ¶ 11.

Americus collected the comments of twenty-eight of Jolivette's interviewers.[1] *See generally* Def.'s Reply in Supp. of Mot. for Summ. J. Ex. C, Interviewer Comments & Preferences, ECF No. 22-3. By the Court's count, nobody ranked Jolivette first, two interviewers ranked Jolivette second, and the remaining twenty-six interviewers ranked Jolivette third or fourth. By contrast, nineteen interviewers ranked Bivins as their top choice, two ranked him tied for first, two ranked him second, and four ranked him third. Another interviewer felt Bivins was the best choice if Kennedy and Jones wished to promote from within. *See* Email from J. Roth to D. Jones (Apr. 12, 2017), ECF No. 22-3 at 2. The interviewers far preferred Bivins to Jolivette. Thus, if

---

[1] A twenty-ninth interviewer, Diadra Powell, also submitted her rankings of the final four candidates, but identified the candidates only as "Candidates 1-4." Therefore, the Court cannot tell from Powell's feedback which candidate she preferred. *See* Email from D. Powell to D. Jones (Apr. 11, 2017), ECF No. 22-3 at 28.

Americus were to make its selection decision solely on the interview process, Bivins would be the clear choice.

Before he left Albany, Jolivette sued the Albany fire department twice for race discrimination and retaliation. *See* Pl.'s Resp. to Def.'s Interrog. No. 9, ECF No. 13-6 (describing lawsuits in 2003 and 2009). Three of the twenty-eight interviewers expressed concern about the circumstances of Jolivette's departure from the Albany fire department. *See* Email from H. Williams to D. Jones (Apr. 10, 2017), ECF No. 22-3 at 7 (noting "several issues in [Jolivette's] past"); Email from H. Williams (on behalf of A. Erkhart) to D. Jones (Apr. 14, 2017), ECF No. 22-3 at 32 (explaining that Erkhart would have "liked to have known the details of the incidents in Albany and why [Jolivette] left"); Email from S. Morris to D. Jones (Apr. 9, 2017), ECF No. 22-3 at 10 (explaining that Jolivette "has a few negative issues in his past career path that could serve to project very negatively on the overall image of the City of Americus and The Americus Fire Department. These issues can easily be found through a simple Google search").[2] Jolivette claims the interviewers "grilled" him on the topic of his past lawsuits. Jolivette Dep. 89:8-10, ECF No. 20-7. Jolivette felt the interviewers focused on the Albany lawsuits rather than his qualifications or expertise. *Id*. at 51:1-

---

[2] The remaining twenty-five interviewers made no mention of Jolivette's Albany-related lawsuits.

6

6; *see also id.* at 76:2-5 (explaining that Jolivette felt "ambushed" by questions from interviewers about his discrimination suits).[3] Several of the interviewers' comments also appeared to mention Jolivette's departure from Albany as a reason not to hire him.

A week after the final interviews, Americus announced Bivins as the new fire chief. Jones Aff. ¶ 12. Kennedy explained that he chose to hire Bivins based on a combination of factors, including Bivins's overall experience, qualifications, intimate knowledge of the department and its personnel, enthusiasm for the job, high interview scores, and his future plans for the department. Kennedy Aff. ¶ 9. Kennedy also cited Bivins's efficiency, positivity, and ambitiousness shown in his job as battalion chief. *Id*.

DISCUSSION

Jolivette sued Americus pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*) for failure to hire and retaliation.[4] Jolivette pointed to no direct evidence of

---

[3] In fact, one of the interviewers on the final panel was Ron Rowe, the Albany fire chief. Jolivette Dep. 52:2-9.

[4] Counts one and two of Jolivette's complaint allege claims under Title VII and 42 U.S.C. § 1981 for subjecting Jolivette "to different terms and conditions of employment because of his race." Compl. ¶¶ 32 & 39, ECF No. 1. Because Americus never employed Jolivette, these claims are dismissed. Additionally, to the extent Jolivette seeks to assert failure to hire and retaliation claims under 42 U.S.C. § 1981, they fail for the same reasons explained below. *See Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256-57 (11th Cir. 2012) (noting that Title VII and § 1981 claims "have the same requirements of proof and use the same analytical

7

discrimination or retaliation by Kennedy or Americus. Therefore, his claims are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Jolivette must first "create an inference of discrimination" by establishing his prima facie case. *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1191 (11th Cir. 2016). "Once the plaintiff has made a prima facie case, a rebuttable presumption arises that the employer has acted illegally." *Id.* (quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010)). "The employer can rebut that presumption by articulating one or more legitimate non-discriminatory reasons for its action." *Id.* (quoting *Alvarez*, 610 F.3d at 1264). "If it does so, the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext" for discrimination or retaliation. *Id.* (quoting *Alvarez*, 610 F.3d at 1264). Jolivette must meet each of the proffered reasons "head on and rebut [them]," and he cannot survive summary judgment "by simply quarreling with the wisdom" of these reasons. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). "The inquiry at this stage asks whether the plaintiff has produced 'reasons sufficient to allow a reasonable factfinder to determine that the defendant's proffered legitimate

---

framework" (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998))).

reasons were not what actually motivated its conduct.'" *Crockett v. GEO Grp., Inc.*, 582 F. App'x 793, 797 (11th Cir. 2014) (per curiam) (quoting *Silvera v. Orange Cty. Sch. Bd.,* 244 F.3d 1253, 1258 (11th Cir. 2001)); *see also id.* (applying the burden-shifting framework to Title VII retaliation claim).

For purposes of this Order, the Court assumes Jolivette can establish prima facie cases of failure to hire and retaliation. Americus contends that Jolivette's claims fail because he cannot show that Kennedy's reasons for choosing Bivins were actually pretext for discriminating against Jolivette. *See* Kennedy Aff. ¶ 9 (offering a "combination" of reasons for choosing Bivins, including his overall experience, qualifications, intimate knowledge of the department and its personnel, enthusiasm for the job, high interview scores, his future plans for the department, efficiency, positivity, and ambitiousness shown in his job as battalion chief). Jolivette attempts to demonstrate pretext based solely on the disparity between his and Bivins's qualifications. "[Q]ualifications evidence may suffice, at least in some circumstances, to show pretext." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (per curiam). A plaintiff may not, however, "prove pretext by asserting baldly that [he] was better qualified than the person who received the position at issue." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1090 (11th Cir. 2004). Instead, "[a] plaintiff must show that the disparities between the

9

successful applicant's and [his] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004)); *see also Ash*, 546 U.S. at 457 (approving of the Eleventh Circuit's formulation of the standard in *Cooper*).

Here, Jolivette points to his résumé and previous experience, but ignores the results of the extensive interview process. The interviewers (including interviewers from outside Americus) overwhelmingly favored Bivins over Jolivette. And subjective reasons like personal qualities and interview performance can be "a legally sufficient, legitimate, nondiscriminatory reason" under the *McDonnell Douglas* framework "if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman*, 229 F.3d at 1034; *see also id*. at 1035-36 (affirming summary judgment based on plaintiff's poor interview when supported by interviewer notes).

The Court finds that Americus has clearly stated a reasonably specific factual basis for its decision here. Notwithstanding Jolivette's qualifications for the job, the overwhelming majority of interviewers reached a consistent conclusion: Bivins was the best choice for the Americus fire department. They liked his

intimate knowledge of the department and its personnel, which he was able to develop through his years with the department and his service as a battalion chief. Jolivette had no experience with the Americus fire department. They also liked Bivins's enthusiasm for the job and his future plans for the department. While such assessments are certainly subjective, it is preposterous to suggest that such criteria would not be on the top of any employer's list when making a decision to hire a department head. The Court rejects counsel's suggestion that such criteria should be ignored.

Americus also had first-hand knowledge of Bivins's efficiency, positivity, and ambitiousness based on his service as a battalion chief. It is true that Bivins has never been a chief or an assistant chief, but if that were the dispositive criteria, an employer would rarely be able to promote from within. The Court acknowledges that Bivins did not have the same formal education as Jolivette. While these are certainly factors to consider in the pretext calculus, they do not necessarily outweigh other factors that are based on on-the-job performance. Moreover, it is not this Court's job to decide who was better qualified—Bivins or Jolivette. Many district judges have been taken to the circuit court woodshed for sitting "as a super-personnel department." *Id*. at 1030 (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)).

When Jolivette's qualifications are stacked up against Bivins's, including those qualifications that were evaluated in the extensive interview process, the Court finds that no reasonable jury could conclude that Jolivette's qualifications were of such comparative superior weight and significance that no reasonable person in the exercise of impartial judgment could have chosen Bivins over him. Accordingly, Jolivette has failed to establish that Americus's legitimate nondiscriminatory reasons for hiring Bivins over him were pretext for unlawful race discrimination or retaliation. Americus is therefore entitled to summary judgment on Jolivette's failure to hire and retaliation claims.

CONCLUSION

As explained above, Americus's motion for summary judgment (ECF No. 13) is granted.

IT IS SO ORDERED, this 13th day of December, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
